## THE CONTINENTAL INSURANCE COMPANY OF NEW YORK v. BENJ. R. HILLMER.

INSURANCE POLICY—*Action*—*Waiver*—*Fact, Concealed*—*New Trial, Error in Denying*. In an action to recover the loss due on an insurance policy, alleged by the insurance company to be void for several reasons, to which allegation there was a reply pleading that the matters averred in the answer of the company rendering the policy void, were waived by the company, the plaintiff was permitted, over the objection of the company, to prove that an installment of the premium note that fell due after the loss, had been demanded by and paid to the company by sending to the general office of the company a registered letter containing the amount. On the hearing of the motion for a new trial, it appeared that the amount sent by the agents of the plaintiff had been promptly returned, and was received by them, but they concealed the fact of its return in their evidence, and this fact was, at the time, unknown to the attorneys of the company. *Held*, The motion for a new trial ought to have been sustained.

*Error from Shawnee District Court.*

ACTION to recover on a fire insurance policy. Judgment for plaintiff *Hillmer*, at the December term, 1886. The defendant *Company* brings the case to this court. The material facts are stated in the opinion.

*Jetmore & Son*, for plaintiff in error.

*A. H. Case*, and *Charles Curtis*, for defendant in error.

Opinion by SIMPSON, C.: This case was tried by the court at the December term, 1886, a jury being waived. All the principal facts are embodied in the following findings of fact:

"1. On September 1, 1885, the plaintiff, Benj. R. Hillmer, was engaged in building and constructing a small dwelling-house on his farm near Topeka, in this county, when one Olney, the then duly-authorized soliciting agent of the Continental Insurance Company, defendant, came to where the plaintiff was building his house, and solicited the plaintiff to insure his house and other property described in plaintiff's petition, and the plaintiff was induced by Olney, and did make the application hereinafter referred to, for the insurance of

said dwelling house, and the personal property described in plaintiff's petition.

"2. At the time the said application was made, the building insured was in course of construction; the floor joists were in, studding set up; the floor or floor sills were on some kind of support, but there was no foundation under said contemplated house; there was no floor, roof, windows, doors, chimneys, or porches, and the intended house was not painted, lathed or plastered, all of which was then well known to said Olney, the soliciting agent of the defendant insurance company.

"3. At the time the said application was made, the said Hillmer, plaintiff, was working on the building, putting on rafters, and Olney was within fifteen or twenty feet of the building, and the time was in the forenoon of September 1st, 1885, at about ten o'clock of said day.

"4. At the date of the taking of the application aforesaid, to wit, in the forenoon of September 1, 1885, by the plaintiff, no one occupied, nor had any one ever occupied, the said structure, nor could said building then be occupied by any person, all of which was then and there known to the said Olney.

"5. Said Olney, agent as aforesaid, at the time and place aforesaid, in full view of said structure, wrote and filled out himself the application aforesaid.

"6. Olney, agent aforesaid, in filling out said application, knowingly made and wrote into said application for said insurance, false answers to the following questions, to wit:

"'Ques.: If not completed, what remains to be done? Ans.: Painting, lathing and plastering.

"'Q. Number of rooms plastered? A. Three.

"'Q. Are there any porches? A. One.

"'Q. Chimneys: material of same? A. Brick.

"'Q. Condition? A. Good.

"'Q. What do they rest on? A. Foundation.

"'Q. Stove pipes: how secured? A. In chimney in same room.

"'Q. Occupancy: is the house occupied for private dwelling only? A. Yes.

"'Q. By owner? A. Yes.

"'Q. Title: have you a fee-simple title? A. Yes.

"'Q. Is the property incumbered? A. No.'

EXHIBIT A.

"7. The application so made for the purpose of obtaining insurance on said property is in words and figures as follows, viz.:

"'Gasoline permit desired for the full term, and assured will pay three dollars therefor on delivery of policy. There is no two-thirds or three-fourths clause in the policy to be issued on this application.

" 'Application of Benjamin R. Hillmer for indemnity by the Continental Insurance Company of New York, against loss or damage by fire and lightning or tornado, in the sum of one thousand dollars, for the term of five years from the 10th of September, 1885.

" 'Present cash value, $650.

" 'Amount asked for, $500.

" '$500.   On my one-story, shingle roof, frame dwelling-house, 18x38 feet, built in 1885, with stone foundation.

" '$300.   On household and kitchen furniture while therein; beds and bedding while therein; on sewing machine while therein; on family wearing apparel while therein; on family provisions and produce while therein, or in cellar; on silver plate or plated ware, or jewelry in use while therein; on printed books, engravings and paintings while therein; on piano, organ or other musical instrument while therein.

" '$200.   On working horses and mules, not exceeding $100 on any one animal, while in barn or on farm, and against lightning while on or off the premises, in use or otherwise.   On colts or cattle, not exceeding $50 on any one animal while in barn or on farm, and against lightning while on or off the premises.   On farming utensils (other than reaper and thresher) while therein.   On wagons, buggies, carriages, harness, robes and saddles while therein, or under cover on the farm. On grain in stacks on farm.   On hay in stacks on the farm, or on cultivated field only, on farm herein described, (hay on marsh land not insured.)   On roof, barn No. 2, — feet by —, built in 18—, with shed attached and including foundation.   On —— roof, —— granary.   On hogs on farm herein described.   Total amount, $1,000.

" 'Situated in the township of Soldier, and the county of Shawnee, state of Kansas.   No. section 17, No. township 11, range 16.   Dwelling-house: height on post from sill to eave, 10 feet.

" 'Q. Completed?   A. No.

" 'Q. Condition?   A. Good; to be painted in 1885.

" 'Q. If not completed, what remains to be done?   A. Painting, lathing, and plastering.

" ' Q. Number of rooms, exclusive of halls and closets?   A. One hall, pantry and closet.

" 'Q. Are there blinds to windows?   A. Will be.

" 'Q. Are there any porches?   A. One.

" 'Q. Number of plastered rooms?   A. Three.

" 'Q. Number of ceiled rooms?   A. None.

" 'Q. Chimneys: material of same?   A. Brick.

" 'Q. Condition?   A. Good.

" 'Q. On what do they rest?   A. On foundation.

" 'Q. Stove pipes: do they pass through the roof?   A. No.

" 'Q. Or floor?   A. No.

" 'Q. Stove pipes: Do they pass through partition?   A. No; none near wood.

" 'Q. How secured?   A. Enter chimney in same room.

" 'Q. Does the chimney enter garret or unoccupied room.   A. No.

" 'Q. Occupancy: Is the house occupied for private dwelling only? A. Yes.

" 'Q. By owner?   A. Yes.

" 'Q. Title: Have you fee-simple title?   A. Yes.

" 'Q. If not, what kind of title have you?   A. —.

" 'Q. Incumbrance: Is the property incumbered?   A. No.

" 'Q. If so, what amount?   A. —.

" 'Q. When due?   A. —.

" 'Q. Have there been any proceedings for foreclosure?   A. —.

" 'Q. Other insurance: Is there any other insurance?   A. No.

" 'Q. Cash value of land and buildings? A. $1,300.

" 'Q. Number of acres? A. Five.

" 'Q. How long have you owned the premises? A. About two months.

" 'Q. Loss by fire: Have you ever had a loss by fire? A. No.

" 'Q. Incendiarism: Have you any fear of incendiarism? A. No.

" 'Q. Barn: Condition? A. —.

" 'Q. Granary: Condition? A. —.

" 'Q. Is it occupied for private barn only? Distance from occupied dwelling?

" 'The foregoing is my own statement, and the questions are answered by me, or by my authority, and will be assumed as my act, and the statements are warranted to be a correct description of the risk. Also a correct valuation of the property named, and of all incumbrances. No exposure within 150 feet. Signed, Benj. R. Hillmer, applicant. Dated September 1, 1885.

" 'State ——, date, Chicago, —— 188—.

" 'Indorsement: Permission is hereby granted to complete the within described dwelling-house, it being conditioned that the building is now occupied as stated in assured's application. If the building is a new one in course of completion, and not occupied, this permit to terminate within thirty days from date hereof. All shavings and refuse to be removed daily. Signed by Sup't.

" 'Tornado. 4–85–22. 500. Edition January, 1884. Installment application. To be used only for dwellings and farm property, churches and school-houses. 520733. 520734. Continental Insurance Company of New York. Benjamin R. Hillmer, applicant. North Topeka P. O., Shawnee county, Kansas. Amount of indemnity, $1,000 rk. Full term. $5. O. P. We have no yearly rate on this plan. Amount of installment note, $40. Amount of first installment, $10. Premium, $50. Policy fee, $3. Note. Note due December 1, 1885, for first installment of $10. Amount cash paid, none.

" 'Questions for solicitors:

" '1. How long has applicant resided in the place? A. Six years in the vicinity.

" '2. Has this company any other risk within 150 feet? If so, give the name of insured, number of policy, and amount insured. A. No.

" '3. Is this diagram strictly correct?

" '4. Did you carefully examine stove-pipes and chimneys?

" '5. Do you regard them as perfectly safe?

" '6. Did you survey the risk personally?

" '7. Do you fully recommend the risk?

" 'O. OLNEY, Solicitor at Topeka, Kansas.

" 'Q. Shall we send the policy to you, or assured? A. To me.

" 'JAS. P. TANNER.

" 'SPECIAL INSTRUCTIONS TO SOLICITORS.

" 'Note below any explanations material to or peculiar feature of the risk, such as particulars of any loss by fire; date of same; cause of fire; on what property, whether insured; if so, in what company, etc. Or if property is incumbered, note applicant's resources and ability to meet mortgage at maturity, etc., etc. R. J. TAYLOR, Supt.

" 'DEAR SIR: The diagram below gives all buildings named in application on the other side, and also all other buildings within 150 feet. In addition, I also make the following comments on the risk: Applicant expects to have all done except lathing, plastering and blinds, and be living in the house, as early as September 10th; so I made application accordingly. O. OLNEY, Solicitor.

" 'Make diagram showing buildings insured and all exposures within

150 feet, giving size, height and number of feet between them; say on each building what it is used for.'
[Blank diagram.]

"8. Olney, agent as aforesaid, at the time he wrote out said application for this insurance, asked the plaintiff Hillmer, in substance, the following questions, namely: 'Have you any notes outstanding against the land?' 'Are there any notes that are liens on the property?' To these questions Hillmer answered in substance: 'There are notes outstanding against the land;' and thereupon said Olney made no further inquiry as to the incumbrances on the property, or to who held these notes, their amount, when due, or by what instrument or instruments they were secured on the property about to be insured. After such questions and answers as aforesaid, said Olney wrote into the application the answer to question number 6, 'Is the property incumbered?' the word 'No.' That after Olney had filled up the application, Olney asked Hillmer to sign it, and stated that it was all right; as an inducement to Hillmer to sign it at once, Olney stated that he was in a hurry to go and see other parties that day and secure reinsurance or renewals for his, Olney's, company; and thereupon Hillmer signed the application without reading it over after Olney had filled in the blanks.

"9. Hillmer signed the application in good faith, relying on the statements of the said Olney that said application was correct.

"10. Olney acted in bad faith with Hillmer in filling up the blanks in this application for insurance.

"11. Immediately after the application had been signed by Hillmer, Olney, as agent aforesaid, forwarded said application to J. R. Taylor, superintendent of the insurance for the defendant, the Continental Insurance Company of New York; and the said Taylor aforesaid, acting as superintendent for said company, as its general agent for the western states, returned to said Olney for delivery to the plaintiff, the policy of insurance sued on in this action.

"12. About the middle of September, 1885, the said Olney, acting as the duly-authorized agent of the said defendant insurance company, delivered the said policy of insurance to Hillmer, and Olney then collected from Hillmer $3 additional fee for a gasoline permit for the full term of said policy.

"13. Before the said application for insurance was made by Hillmer as aforesaid, to wit, July 8, 1885, Hillmer had obtained a loan on the land from Elizabeth L. Jarrett, de-

fendant, for three hundred dollars, through one Jonathan Thomas, who was the agent of Elizabeth L. Jarrett, at Topeka, in this county; and Hillmer had executed his note and mortgage to her for that amount, and which mortgage was held by Thomas as her agent, when this application for insurance was made; the mortgage above referred to provided in one of its conditions that Hillmer should insure the property for the benefit of said mortgagee, or secure such insurance for her benefit, as additional security for this loan of three hundred dollars; and which mortgage was, before the making of such application for said insurance, duly recorded in the register of deeds' office for this county.

"14. Soon after the said policy of insurance was delivered by the agent of the insurance company defendant to Hillmer, he delivered the same to Thomas, the agent of Mrs. Jarrett, and afterward, and before the loss by fire of the property insured, Hillmer assigned the policy of insurance to Mrs. Elizabeth L. Jarrett.

"15. Before the assignment of said policy of insurance was made by Hillmer to Mrs. Jarrett, the said insurance company defendant, by its soliciting agent Olney, had taken an application for insurance for one McIntosh on a dwelling-house situated on a small tract of land adjoining Hillmer's land, and this policy of insurance had been issued to McIntosh, and Thomas had as agent made a small loan of money to McIntosh, which loan was secured by a mortgage on McIntosh's land, and which latter mortgage contained a condition similar to the Hillmer mortgage for a policy of insurance for the benefit of the mortgagee. The McIntosh insurance policy was also delivered to Thomas by said Olney, who was then acting as the agent of the mortgagee named in the McIntosh mortgage; Olney called at Thomas's office, in North Topeka, for the purpose of collecting the first premium on the McIntosh policy from Thomas; Thomas then called Olney's attention to the fact that the McIntosh policy was not made payable to the mortgagee named in the McIntosh mortgage, when Olney told Thomas that it would answer the same purpose if McIntosh, or the holder of a policy, would change the blank printed on the policy, and assign the same to the mortgagee; that he had practiced law for more than twenty years, and that he had never heard this proposition disputed; and thereupon Olney received from Thomas the first premium due on the McIntosh policy, and left the office. Afterward the said Thomas procured both the said McIntosh and the said Hill-

mer, though on different days, to assign their respective policies to the persons who held their respective mortgages, in pursuance of Olney's suggestion, as Thomas supposed.

"16. On October 22, 1885, the dwelling-house and personal property insured were totally destroyed by fire; the damage sustained by the plaintiff by reason of said dwelling-house being so destroyed by fire is $400; and the damage sustained by the plaintiff by reason of the personal property covered by said policy being destroyed by said fire is $300. A copy of said policy, with all its conditions and indorsements, including assignment, is hereto attached, marked 'A,' and made a part of these conclusions of fact.

"17. At and before the making of the application by said Hillmer for said insurance, the said Hillmer, plaintiff, had procured and purchased the lumber and material from the defendant, Jonathan Thomas, of which the dwelling-house described in said policy of insurance was then being constructed, and from which said dwelling-house was completed. Thomas, as a lumber merchant and material-man, and for which afterward the said Thomas formally filed the declaration of a mechanics' lien, under the statute of the state in respect to mechanics' liens, by filing his declaration of such lien in the office of the clerk of the district court of this county, November 19, 1885, on said dwelling-house and premises on which it was then situated, for the sum of $170.39, the balance then and there due to him for said lumber and material, and which sum is still unpaid for such material by said Hillmer, and which lien, at the time of signing said application for said material, was then in law, and now is, an incumbrance on said property and premises.

"18. Before and at the time of making the application by Hillmer and the delivery to him of the policy in suit, a chattel mortgage had been given by Hillmer and wife to Millspaugh & Thompson for $133.25, of date August 17, 1885, due November 14, 1885, and filed for record in chattel-mortgage record book No. 7, for Shawnee county, Kansas, on the live stock covered by said insurance, and described in the application and policy herein; and which is still due and unpaid, and an incumbrance on said property.

"19. Before and at the time of the making of said application by Hillmer and the delivery to him of the policy in suit, a chattel mortgage had been given by Hillmer and wife to W. Ledeburg, which was written and filled up by Hillmer himself, for $125, of date December 6, 1883, due August 15,

1884, on the personal property and household goods situated in the dwelling-house, and described in the application and policy herein, and insured thereby, and filed for record in the chattel-mortgage record book of Shawnee county, vol. 5, December 8, 1883. Said Ledeburg, on August 9, 1884, filed affidavit of renewal on said mortgage, and on April 15, 1885, assigned said mortgage to one Elmer Hanson, who on August 15, 1885, filed affidavit of renewal thereto, and which mortgage is still due and unpaid, and was and is an incumbrance on said property.

"20. At the time of the signing of said application by Hillmer and the delivery to him of the said policy, he knew of the existence of the several incumbrances above stated.

"21. Defendant insurance company never gave its consent to the assignment of said policy of insurance, by indorsement in writing.

"22. Within a few days after the loss by fire of the property so insured and covered by said policy, one Kneutson, the then special agent and adjuster of the defendant company, then living at Topeka, in this county, and having notice of the fire and the loss by the said plaintiff, went to the office of Jonathan Thomas and made a full examination of the policy in the case, and of the assignment to Mrs. Jarrett, and also went to the place of the fire and examined the loss; and after the examination the said Kneutson, agent as aforesaid for defendant company, returned to the office of the said Thomas, and then agreed that said loss was a total loss, and promised the same should be adjusted and paid. Afterward, the defendant company having failed to adjust said loss, the plaintiff made formal proof to the defendant company of the loss by fire of the said property, and transmitted the same to the defendant insurance company at Chicago, Illinois, on the 21st day of November, 1885.

"23. When Hillmer signed the application for insurance, the said Olney executed and delivered to him the following receipt, namely:

"'INSTALLMENT RECEIPT, WESTERN DEPARTMENT, CHICAGO, ILL.— Received of Benjamin R. Hillmer an application for insurance by the Continental Insurance Company of New York, on property to the amount of one thousand dollars, for the term of five years, subject to the approval of the company; also a note or notes for the payment of the premium in five installments, as represented on the back of this receipt; also all to be returned if policy is not issued. Dated at North Topeka, this thirty-first day of August, 1885.      O. OLNEY, *Agent*.'

[*Over.*]

"And upon the back of this receipt was the following contract, partly written and partly printed:

" 'You have given note amounting to ten dollars for first installment upon your premium and for the payment of policy and survey fee, which will fall due on the first day of December, 1885, also a note of four installments, due as follows: $10, due on the first day of September, 1886; $10, due on the first day of September, 1887; $10, due on the first day of September, 1888; $10, due on the first day of September, 1889.

" 'A printed notice will be mailed you fifteen days before each installment falls due, directing you how to remit the money, but the failure of such notice to reach you will not relieve you of your obligation to pay each installment at maturity, in order to keep your policy in force. If you do not receive the policy within thirty days from the date of this receipt, or a notice to pay installments at the proper time, address R. J. Taylor, Sup't, Chicago, Ill.'

"At the time of the loss by fire of the property described in the petition of plaintiff, Hillmer had not paid any installments of the premium for the insurance, except $3 paid at the time of receiving the policy from Olney for the gasoline permit. The payments which he was to pay for the said premium are all described in the above contract here copied. The first note, falling due December 1, 1885, was sent with the other notes by Olney, to the home office for collection, and according to the contract of employment between Olney and the insurance company, the note of ten dollars belonged to Olney, and the company was collecting this note for Olney in the transaction hereinafter set forth.

"24. Some time after Kneutson, the adjusting agent of the defendant company, had examined the loss sustained by plaintiff by reason of said fire, and Thomas and Hillmer not hearing from said company, Thomas wrote again to the home office at Chicago, Illinois, on or about November 28, 1885, as agent of Hillmer and Mrs. Jarrett; this letter was answered by Taylor, superintendent of defendant company, November 3, 1885, as follows:

[Loss Department. No. 28,256.]

OFFICE WESTERN DEPARTMENT, CONTINENTAL INSURANCE CO.,
CORNER CLARK AND ADAMS STS.—R. J. TAYLOR, SUP'T.
November 3d, 1885.

J. Thomas, Esq., North Topeka, Kansas — DEAR SIR: We have yours of October 31, asking us if any action has been taken by the company relative to an adjustment of loss on property belonging to Benjamin R. Hillmer. In reply would say we forwarded papers in this case October 28, to our special agent, K. Kneutson, of Topeka; we have no report from him as yet, and we do not know whether he has investigated the case or not. If he has not, he will do so as soon as he can reach it.

Yours truly, R. J. TAYLOR, Sup't.

"25. On the 18th day of November, 1885, the home office

at Chicago, Illinois, wrote the following letter to Hillmer, which was received by him by due course of mail at Topeka, Kansas, and which letter Hillmer delivered to Thomas, for Thomas to send the money therein asked for, and to answer the same, which letter was as follows, to wit:

OFFICE WESTERN DEPARTMENT, CONTINENTAL INSURANCE CO., N. Y.　 
　LAKE SIDE BUILDING, COR. CLARK AND ADAMS STS., CHICAGO, ILL.,　 
　　　　　　　　　　　　　　　　November 18, 1885. 

*B. R. Hillmer, North Topeka, Kansas* — DEAR SIR: Your note given for the first premium for insurance in this company, under policy No. 520,733, will fall due on the first day of December – 4, 1885. Remittances may be made by post-office order, bank draft, or registered letter, or express, at the risk of this company. Post-office orders are safest and cheapest. We send you herewith envelope addressed to us, in which please inclose this sheet, and the amount due as stated below, and forward to us. We feel assured you will take pleasure in paying the above note, thus setting an example for our imitation in the faithful payment of any loss which may occur under your policy. We invite your attention to the inclosed statement of this company after paying all losses, by which you will see proof of our ability to meet our obligations.

　　　　　　Respectfully yours,　　　R. J. TAYLOR, *Sup't.*
　Amount of note, $10. Amount of interest, $—. Total, $10. O. Olney, 9993.

"26. On December 2d, 1885, the said Thomas, in pursuance of the request of said Hillmer, wrote the said home office a letter and inclosed therein ten dollars in money, as requested by said company in its letter of November 18th, 1885, which letter was duly registered and mailed at Topeka, Kansas, and which letter was received by said defendant insurance company at its home office in Chicago, Illinois, on the 4th day of December, 1885. At the time of the sending of said letter on November 18th, 1885, to Thomas by said company defendant, and the sending of said letter by Thomas and the ten dollars therein in money, and its reception at said home office of said insurance company defendant, at Chicago, Illinois, on the 4th day of December, 1885, Kneutson, the duly-authorized adjusting agent of the said company defendant, had full knowledge of the Jarrett mortgage, and the assignment of the policy to Mrs. Jarrett by said Hillmer, and of all incumbrances that were placed on said land and property before the insurance of said property.

"27. Hillmer, the plaintiff, made due proof of loss to said company defendant, prior to the commencement of this action, and within the time and in the manner required by the terms of said policy.

"28. The actual loss under said policy to the plaintiff was in the sum of seven hundred dollars, as hereinbefore stated.

"29. There is due the defendant, Elizabeth L. Jarrett, from the said Benj. R. Hillmer, on account of the note and mortgage set up in the answer of the said Elizabeth L. Jarrett, the sum of $347.40, with interest from this date at the rate of 12 per cent. per annum, and said sum of money is a first lien on the premises described in her answer.

"30. There is due to Jonathan Thomas from the defendant, Benj. R. Hillmer, on account of the mechanics' lien described in the answer of the said Thomas, the sum of $183.31, with interest from this date at the rate of seven per cent. per annum, and said sum of money is a second lien on the premises."

We shall discuss only one question, deeming all the others as having been the subject of so much discussion that the law respecting them is well settled. We are satisfied that the trial court erred in overruling the motion for a new trial. The defendant in error brought his action to recover on the insurance policy; the insurance company answered, alleging many acts of the defendant in error that would render the policy void; the defendant in error replied, that the insurance company, its agents and servants, had full knowledge of all these things set forth in its answer, and fully assented to and fully waived the same. At the trial the defendant in error was allowed to prove, over the objection of the plaintiff in error, the payment of an installment of the premium due on the 2d day of December, 1885, this being after the loss, and after proof thereof had been made. The reception by the insurance company of a part of the premium after the loss, or after non-compliance with some express stipulation, combined with the knowledge of the underwriters, is such an admission of liability as amounts to a waiver of many things; and while the defendant in error had pleaded waiver by knowledge of all things set forth in the answer of the company that rendered the policy void, no waiver by payment was put in issue by the pleadings, and for this reason the ruling was wrong. The truth is, that Jonathan Thomas and his clerk both testified to having sent the installment of the premium, by registered letter, to the general agent of the company at Chicago,

but suppressed the fact established on the hearing of the motion for a new trial, that it had been promptly returned, and had been received by Thomas. These witnesses were attempting to prove payment of the premium, and the fact which they suppressed naturally inhered in, and was an essential part of their statement. It may be admitted, that, ordinarily, a witness is compelled to answer only the questions asked, and is not required to volunteer any statement outside of a direct answer; but when they must have known that the effect of their statement was to prove a payment, they were compelled by their oaths, and by every rule of fair dealing, not to suppress the fact that the money they sent had been returned to them. Thomas was a party to this action, having a material lien on the insured property, and claiming his portion of the proceeds to be recovered on the policy. As a party, his suppression of the truth, under the circumstances of this case, was misconduct; and this is designating it in very mild terms. This issue not having been made by the pleadings, the plaintiff in error could meet it in no other manner than by the showing that was made in support of a motion for a new trial, and we think this motion ought to have been sustained. All the special facts of waiver are not found by the court; that is to say, the acts of the company constituting a waiver of each express stipulation are not enumerated and set forth in the special findings, while the twenty-sixth finding of fact and the second conclusion of law seem to have been produced by the evidence of Thomas and his clerk, respecting the payment of an installment of the premium and its reception, long after the knowledge of the loss had been brought home to the company, and hence was very prejudicial to the plaintiff in error.

*New trial ought to have been granted.*

It is recommended that the case be reversed, and remanded with instructions to the district court to sustain the motion for a new trial.

By the Court: It is so ordered.

All the Justices concurring.