All the Justices concurring.

67  217<br/>71  651

ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY
v. T. J. GASTON.
No. 12,993.   (72 Pac. 777.)

SYLLABUS BY THE COURT.

PRACTICE, DISTRICT COURT—*Motion for New Trial*. A motion for a new trial on the ground of newly-discovered evidence need not be verified, nor need it be sustained by any affidavit filed at the same time. It is a sufficient compliance with the statute in this regard that it is sustained by an affidavit presented at the hearing of the motion.

Error from Sedgwick district court; D. M. DALE, judge. Opinion filed June 6, 1903. Reversed.

*J. W. Gleed, J. L. Hunt, Gleed, Ware & Gleed*, and *D. E. Palmer*, for plaintiff in error.

*J. D. Houston*, and *T. C. Wilson*, for defendant in error.

The opinion of the court was delivered by

MASON, J.: At Wichita, on the evening of October 26, 1897, T. J. Gaston attempted to purchase a ticket to Liberty, Kan., by way of the St. Louis & San Francisco (or "Frisco") railroad. The agent, who was

also the agent of the Atchison, Topeka & Santa Fe Railroad Company, gave him a ticket to Liberty by way of the road of the latter company. About ten o'clock at night Gaston took a "Frisco" train, supposing it to be that for which he had a ticket. The conductor refused to honor the ticket, and upon Gaston's refusal to pay fare discharged him from the train at Minneha station, where no depot was open at the time. Gaston walked back to Wichita, a distance of some six miles. On December 4, 1897, he brought action against the "Frisco" company, alleging that, by reason of a cold rain's falling at the time referred to, he had contracted a serious cold and sickness, so that he was permanently disabled from carrying on his vocation of teaching school, and asking damages in the sum of $5200. On February 28, 1898, he filed an amended petition, in which he alleged that, by reason of the matters complained of, he also contracted a cold upon his lungs from which he had not recovered, and that he had been threatened with pneumonia at several times, and had been continuously sick. On July 1, 1898, he filed another amended petition, in which he further alleged that, as a result of his exposure, he had become sick with pneumonia and consumption, and had been rendered a confirmed invalid and sufferer and consumptive and physically incapable of ever afterward performing any of the usual vocations of life. In this pleading he placed his damages at $15,300. The defendant having filed an answer including a general denial, a jury trial was had, resulting in a verdict for plaintiff for $15,000, for permanent physical injury and loss of ability to earn a livelihood, on which judgment was rendered, which defendant now seeks to reverse.

Various rulings are assigned as error, including the

overruling of a motion for a new trial on the ground of newly-discovered evidence. The newly-discovered evidence alleged consisted of a written statement made in connection with an application for life insurance by Gaston and also a physician's certificate in the same matter made by Dr. T. W. Heuston, who was the principal witness of plaintiff (other than himself) upon the question of his physical condition before and after the occurrence on which the action was based. The petition of plaintiff, filed December 5, 1897, stated that as a result of his exposure he had become sick and disabled from ever after carrying on his vocation. He testified that he taught school the next day after he reached his home, then was sick for a few days, and got to work again for a couple of weeks, and then was taken down again with pains in his lungs; that this kept up, off and on, he being part of the time in school and part of the time down, all through the fall and spring; that he had a doctor attending him from the time he went back to Liberty from Wichita (a few days after the occurrence) up to some time in the following April. Doctor Heuston testified that some three to five months before October 26, 1897, he examined plaintiff for membership in an insurance order and considered him sound; that he was called to treat him and examined him again about October 29 or 30 and found him suffering from a severe cold which had affected his lungs to a certain extent, which he diagnosed as a slight attack of pneumonia from the effects of the cold; that he had had this trouble of the lungs ever since the witness first treated him in the latter part of October, and that he had not been a well man since; that in the course of his attendance upon plaintiff at this time be called twice a day for five or six days; that an abscess developed in plaintiff's lungs some ten or fifteen days later.

The matter set out in the motion for a new trial purporting to be a copy of the application for life insurance signed by plaintiff, made December 28, 1897, shows statements that he had not been confined to the house by illness for years; that he had not consulted a physician since childhood; that he had not since childhood had any lung disease; that he had no reason to believe that he was not in good health at the time of the application. The matter set out as a copy of the certificate of Doctor Heuston accompanying the application shows statements that upon a careful examination he found the lungs perfectly normal; that from his appearance and statements he believed the applicant uniformly enjoyed good health; that he had no predisposition, hereditary or acquired, to any local or constitutional disease, and that the doctor unqualifiedly recommended the acceptance of the risk.

The importance of this evidence under the circumstances, and in the absence of any explanation or contradiction, is too obvious to require extended comment. The entire case of the plaintiff, so far as concerns the large amount of damages awarded him, depends upon the proposition that he was suffering from a permanent lung trouble occasioned by, and dating from, his exposure on the night of October 26, 1897. This is a matter upon which it is evident that it would be difficult for defendant to procure any evidence, whatever the facts might be. Plaintiff's own written statement of his condition made two months later, and after this action was brought, while of course not conclusive against him, is evidence so pertinent and weighty that defendant's application for a new trial, in order that the judgment of a jury may be had upon it, comes with great force if it is made in due time and in a proper manner; and while the statements of

Railroad Co. v. Gaston.

Doctor Heuston would not be available to defendant as direct evidence, and while a new trial would probably not be granted in any case for the discovery of merely impeaching evidence, a certificate of the character indicated, made in connection with the written application of the plaintiff, by the doctor who attended him after his exposure and who was his chief witness at the trial, necessarily adds to the force to be given to the plaintiff's own statement, and is a matter to be weighed in determining the sufficiency of the showing in support of the motion for a new trial. We think the showing was sufficient to require the granting of the motion, if that question was properly before the trial court for consideration.

Within three days after the verdict, and at the same term of court, defendant filed a motion for a new trial. One of the grounds set out in this motion was newly-discovered evidence, but the character of such evidence was not indicated, nor was the motion verified. This motion was argued some weeks later, but not decided. Several months afterward, and at a subsequent term of court, defendant filed a paper designated as a supplemental motion for a new trial, which was verified and included the matter already described. The district court overruled each motion separately. It is urged by defendant in error that the later motion could not be considered on its merits because filed after the term had ended, and it is argued that under the several sections of the code affecting the matter a new trial on account of newly-discovered evidence can only be granted on motion when the application is made at the same term of court at which the verdict was rendered, and that after the expiration of such term the application can only be made by petition. In *Schallehn v. Hibbard*, 64

Kan. 601, 605, 68 Pac. 61, it was held that such a motion might be filed even after the term had expired, where a filing within the term was unavoidably prevented. But it is objected that in the present case there was no showing that plaintiff was unavoidably prevented from filing this motion before the expiration of the term at which the verdict was rendered. The allegation of the motion is that the matters relied on were discovered since the trial—not in set terms, however, since the expiration of the term of court at which the trial was had. But the motion was filed December 8, 1898, and recited that the new evidence was presented at the first opportunity. This is not a very explicit statement, and perhaps does not show that the filing of this motion during the term at which trial was had was unavoidably prevented, within the meaning of the statute, but taken in connection with the facts that the trial was in May and that the new term began on the first Tuesday in September, it may have this effect, and so bring the case within the rule announced in *Schallehn v. Hibbard*, supra, and upon that ground require a determination of the motion upon its merits.

It is not necessary to decide this question however for there is another aspect of the matter under which the defendant was entitled to have the effect of the newly-discovered evidence passed on. The verified supplemental motion may be considered as an affidavit in support of the motion previously filed. This is what it was in fact, and the name by which it is designated is not material, so that it is not misleading. While it was described as a motion and not merely as an affidavit in support of a motion, its designation as a "supplemental" motion connected it with the motion already on file. Although that motion had been argued it had not been decided. A copy of the affi-

davit or new motion was served on plaintiff's attorney. It was filed on December 8; 1899, and the ruling of the court on the original and supplemental motions was made February 6, 1901.

The statute does not require a motion for a new trial on the ground of newly-discovered evidence to be verified or to be supported by affidavits filed at the time. In *Werner v. Edmiston*, 24 Kan. 147, 150, it was said :

"Certain of the grounds for a new trial must be sustained by affidavit. (Code, § 309.) The fact that a motion is filed including those grounds is notice to the opposite party that affidavits sustaining them will be offered. And a party making a motion is under no obligation to disclose the testimony he may have to offer on the hearing thereof."

In that case the motion for a new trial was not verified, and named newly-discovered evidence as one of its grounds, without indicating the nature of the evidence. At the hearing of the motion an affidavit was offered in support of the motion, but the court refused to receive it on the ground that it had not been filed with the motion for a new trial and had not been on file a reasonable time before the hearing. It appeared that the adverse party had had no notice of the filing of the affidavit until after the motion for a new trial was called up for decision. This court held that the rejection of the affidavit was error and ordered the granting of a new trial. In the present case the fact that the affidavit was not presented until after the motion had been argued would be important if the court had refused to consider it on that ground. But although the plaintiff was served with a copy of it the record shows no motion to strike it out or objection to its consideration as evidence or otherwise. The fact that the district court overruled the motion rather

than struck it from the files justifies the inference that it was considered on its merits. (*Bank v. Miller*, 59 Kan. 743, 54 Pac. 1070.) This inference is perhaps strengthened by the fact that the decision was not made until more than a year after the motion was filed. It is obvious that this interval afforded plaintiff abundant time, after notice of the contents of the affidavit or motion, to present controverting evidence or additional argument.

If it were not for the peculiar character of the newly-discovered evidence alleged, the showing of the defendant would be subject to just criticism on the ground of a failure to establish due diligence and to disclose the names of the witnesses by whom it was expected to prove the new matter. But the fact that the plaintiff had made an application for life insurance after the commencement of the action, and the circumstances accompanying it, so obviously lay outside the line of ordinary inquiry that it is difficult to conceive what specific allegations in support of diligence could be expected from defendant other than that of actual want of notice. (*Railway Co. v. Lovelace*, 57 Kan. 195, 45 Pac. 590.) The importance of the new evidence here alleged lies in the very fact of its documentary character. The setting out of the writings in full advised plaintiff as to what he must expect to meet. It is of little consequence by whom their authenticity might be sought to be established. The witnesses, in the sense in which it is incumbent upon an applicant for a new trial to disclose them, are the writings themselves. (*Building Assn. v. McMullen*, 59 Kan. 493, 53 Pac. 481.)

We conclude that the overruling of the motion for a new trial on the ground of newly-discovered evidence was error. The other matters argued turn

largely upon a number of special findings. At another trial the same questions may not arise or may be presented, if at all, in a different aspect. We therefore do not pass on them at this time.

The judgment is reversed, with directions to grant a new trial.

All the Justices concurring.