## ROESER v. PEASE.

No. 2078.   Opinion Filed April 5, 1913.

(131 Pac. 534.)

1. **NEW TRIAL—Newly Discovered Evidence.** A motion for new trial on the ground of newly discovered evidence should be sustained, when it appears that the evidence, if produced, would probably produce a different result.

2. **SAME.** Where the newly discovered evidence is material and would probably produce a different result, and the losing party has not failed to produce it at the trial because of lack of diligence on his part, a motion for new trial on that ground should be sustained.

3. **WITNESSES—Competency—Physicians.** The testimony of a physician or surgeon, concerning any communication made to him by his patient with reference to any physical disease, or any knowledge obtained by him from a physical examination of such patient, may be required, if the patient offers himself as a witness and testifies upon the same subject. Comp. Laws 1909, sec. 5842.

(Syllabus by Ames, C.)

*Error from District Court, Tulsa County;*
*L. M. Poe, Judge.*

Action by Minnie A. Pease, plaintiff below, defendant in error, against W. H. Roeser, defendant below, plaintiff in error, to recover damages for personal injuries. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Martin, Rice & Lyons,* for plaintiff in error.
*Randolph & Haver,* for defendant in error.

Opinion by AMES, C. The plaintiff in this case was injured by being thrown from a carriage. The carriage was turned

over by frightened horses running away. The horses took fright from defendant's automobile on one of the streets of Tulsa. The plaintiff and her child were sitting on the rear seat of the carriage, which was being driven south on Boulder avenue close to the intersection of Second street. When the carriage was about 150 feet from the corner, the automobile turned north on Boulder at a speed estimated by various witnesses of from eight to twenty miles per hour. There was some evidence tending to show that the automobile went north about the center of the street, although the great majority of the witnesses testified that it was close to the east curb line. When the horses saw the automobile, they were frightened, but the driver did not lose control over them until the automobile had passed, when they ran away, throwing out the plaintiff and injuring her. The jury returned a verdict for the plaintiff for $3,100.

Several errors are assigned and discussed, but it will only be necessary to examine the one growing out of the ruling of the court on a motion for new trial on the ground of newly discovered evidence.

The plaintiff alleged that she sustained numerous injuries by reason of the accident, and, among others, that she was injured internally, and that these internal injuries caused severe and acute pains in her back and severe headaches and fevers, and that these injuries were permanent. Her testimony was to the effect that prior to the accident she was in good health, but that since the accident she had had poor health had suffered a great deal with her back, and had had headaches, and was unable to work without the recurrence of these pains; that prior to this accident she had not had these backaches and headaches "to amount to anything at all." One of the witnesses offered by the plaintiff prior to the time she testified was Dr. Grosshart, who was one, of the physicians called by the plaintiff immediately after the accident. His testimony in chief was confined to the condition in which he found the plaintiff at the time, and his cross-examination was likewise so confined. After

the trial, the defendant's attorneys, while lunching with this doctor, were informed by him that some six or seven or eight months prior to the accident he had examined the plaintiff and found that at that time her uterus was enlarged and that its supports were flabby; that she complained of pains in her back and head; and that the condition in which he found her was one that would naturally produce headaches and pains in her back. The defendant thereupon filed a motion for new trial upon the ground of this newly discovered evidence, and upon this motion a hearing was had, at which it developed that Dr. Grosshart was bitterly hostile to the defendant; that he would not have disclosed these facts to the defendant's attorneys but for the reason that he thought the case was finally disposed of; that he yielded the information at the hearing reluctantly; that the facts which he had disclosed to the defendant's attorneys were substantially as testified to by him. The motion for new trial was overruled.

It seems apparent to us that this testimony was material. The only evidence on the subject introduced at the trial was the testimony of the plaintiff and her mother to the effect that prior to the accident she had not suffered with these backaches and headaches, while this testimony disclosed that she was afflicted with a physical disturbance which had caused similar pains, and which was of such a nature as to continue to cause them. If this testimony was true, if the plaintiff had, prior to the accident, had these same afflictions, if the accident was not the cause of all of them, and if the jury assessed damages as for a permanent injury caused by the accident, when in fact these injuries were not so caused, it is manifest that an injustice was committed. The nature of the testimony, the nature of the injuries alleged to be permanent, as well as the amount of the award, all demonstrate that the jury believed, as they had a right to believe, that there were permanent injuries caused by the accident. This new evidence, if believed by the jury, would necessarily produce a different verdict. It might not necessarily produce a verdict for the defendant, but it would, if

true, necessarily produce a smaller verdict. We are not unmindful of the rule established in this jurisdiction that, before a new trial should be granted on the ground of newly discovered evidence, it should appear that the evidence, if produced, would probably produce a different result, and that in passing upon such a motion a certain amount of discretion is vested in the trial court. *Eisminger v. Beman,* 32 Okla. 818, 124 Pac. 289; *Lookabaugh v. Bowmaker,* 30 Okla. 242, 122 Pac. 200; *Hobbs v. Smith,* 27 Okla. 830, 115 Pac. 347, 34 L. R. A. (N. S.) 697; *Huster v. Winn,* 8 Okla. 569, 58 Pac. 736.

But for the reasons which we have already stated, it seems clear to us that this evidence, if true, would probably produce a materially different result. It is contended, however, that the defendant cannot avail himself of this evidence, because he did not exercise reasonable diligence to discover it prior to the trial. There is no specific statement in the motion that the defendant and his attorneys did not know of this evidence at the trial; but, if this objection had been lodged against the motion, there would have been no necessity for introducing evidence to support it. The fact that there was a hearing, that the evidence was offered, that a trial was had, indicates very clearly that the motion was treated as stating sufficient facts and being sufficient in form. It can be safely said that it appears from the record, taken as a whole, that neither defendant nor his attorneys had ever learned of this evidence until after the verdict; that the only reason that they then learned of it was from a chance remark by Dr. Grosshart, which would not have been made but for the fact that he thought the case was finally disposed of; that, after learning that the evidence would be material, he was very reluctant to give it; that he refused to make an affidavit setting up the facts which he had stated to the defendant's attorneys; and that he only testified upon the motion for new trial upon the requirement of the court. The plaintiff herself at the trial had testified that she had not suffered from these aches and pains, "to amount to anything

at all," and Dr. Grosshart testified only to the facts which he had ascertained upon the visit immediately after the accident. While, of course, we recognize the rule that, before a new trial will be' granted on the ground of newly discovered evidence, it must affirmatively appear that the failure to discover the evidence was not due to negligence or lack of diligence on the part of the party making the application, yet we think the defendant brings himself well within this rule. He would have no way of knowing that the plaintiff had an enlarged uterus, which produced headaches and backaches. Naturally he could not make inquiry of her to ascertain this fact. He did not know that Dr. Grosshart had treated her before, and there was no reasonable way by which he could ascertain that fact, and Dr. Grosshart naturally would not disclose, voluntarily, her physical condition to strangers, and particularly to this defendant, whom he disliked. The plaintiff herself, upon the trial, testified that she had not suffered from these aches and pains, and at that time the defendant had no reason to believe otherwise.

A somewhat similar situation was presented in *St. L. & S. F. R. Co. v. Hurley,* 30 Okla. 333, 120 Pac. 568, where it was held that it was not lack of diligence for the defendant to make inquiry of the plaintiff's physical condition from doctors who had treated the plaintiff, and who were subpoenaed as witnesses for the plaintiff, and that it had a right to rely upon the plaintiff's testimony as being true, and that subsequent facts ascertained from the doctors, which would probably have produced a different result on the trial, might be made the basis of a motion for new trial. Other similar cases cited by this court in that opinion are *Atlanta Consolidated Street Ry. Co. v. Beauchamp,* 93 Ga. 6, 19 S. E. 24; *First Nat. Bank of Shenandoah v. W. St. L. & P. Ry. Co.,* 61 Iowa, 700, 17 N. W. 48; *Stackpole v. Perkins,* 85 Me. 298, 27 Atl. 160. See, also, *St. L. & S. F. R. Co. v. Gaston,* 67 Kan. 217, 72 Pac. 777; *Continental Ins. Co. v. Hillmer,* 42 Kan. 275, 287, 21 Pac. 1044.

Finally, the plaintiff argues that the new testimony sought to be elicited from Dr. Grosshart is incompetent, because the information was secured by the doctor while on a professional visit to the plaintiff, and that therefore it is privileged.

Sec. 5842 of Comp. Laws 1909 provides as follows:

"The following persons shall be incompetent to testify: * * * A physician or surgeon concerning any communication made to him by his patient with reference to any physical or supposed physical disease, or any knowledge obtained by a personal examination of any such patient: Provided, that if a person offer himself as a witness, that is to be deemed a consent to the examination; also, if an attorney, clergyman or priest, physician or surgeon on the same subject, within the meaning of the last three subdivisions of this section."

Counsel for the plaintiff and defendant do not disagree as to the law. Both sides concede that the doctor's testimony is protected by the plaintiff's privilege, unless she has waived it by offering herself as a witness on the same subject; and whether or not she had testified on the same subject is the point at issue between counsel. The subject, of course, is the condition of her health some six or seven or eight months prior to the accident, at which time Dr. Grosshart testifies as to her condition. Did she testify on this subject at the trial? The substance of her testimony is to the effect that she was in good health just before the accident; that for a year previous to that time she, as a rule, was a healthy woman; that she never had a headache to amount to anything at all. From this testimony it appears that she did testify generally as to the condition of her health prior to the accident, and specifically that she was not accustomed to having headaches before that time. Some authorities are cited by the plaintiff tending to show that one does not waive the privilege by giving testimony as to his general health or physical condition. But in the case at bar the plaintiff not only testified as to her general health, but she testified specifically with reference to headaches. Here the exact point at issue was whether or not these headaches and backaches, from which she testified that she was suffering at

the time of the trial, were permanent injuries caused by the accident. The effect of her testimony was to lead the jury to believe that she had not suffered from these same afflictions prior to the accident. If she can go upon the witness stand and testify that she had not suffered from these afflictions prior to the accident, and then prevent the only available impeaching testimony from being disclosed, by a claim of privilege, it would seem that a mockery is being made of justice, and we do not think our statue contemplates such a condition. The theory upon which the privilege is based is that a person is entitled to have his physical disabilities protected from public curiosity. If, however, he goes into a court of justice and bases an action upon the existence of a physical disability, and testifies himself as to its existence or nonexistence, he, of course, is not entitled longer to claim a privilege for his condition, and the statute does not contemplate protecting him in such case. An interesting discussion of the subject is contained in the fourth volume of Wigmore on Evidence, sec. 2380 *et seq.*

We think the case should be reversed and remanded.

By the Court: It is so ordered.