Zimmerman, J.,
 

 dissenting. From a perusal of the record, it is difficult to understand why the jury awarded the plaintiff the sum of $3000, or why the trial court permitted such verdict to stand.
 

 Exaggeration, evasiveness and lack of candor characterized plaintiff’s testimony to a marked degree. If plaintiff received a bump on the back of the head, as he says he did, that, with perhaps an accompanying stiffness of the neck muscles, was the extent of his in
 
 *11
 
 jury on July 6, 1934. He was able to busy himself immediately with investigating the cause of the broken window, climbing onto the roof of an adjoining building in the process, and police officer Przlomski, who arrived on the scene within a comparatively short time, unequivocally testified that plaintiff told him he “wasn’t hurt.”
 

 Important items comprising-the damages asserted by plaintiff were impairment of health and faculties alleged to have resulted from the injury of July 6, 1934. At the trial he testified that loss of weight, severe and chronic headaches, failing eye-sight, inability to sleep, nervous shock, facial paralysis, muscular contractions in the legs and hands, and inability to walk normally were among the conditions from which he was suffering.
 

 On direct examination plaintiff also maintained his general physical condition had been good prior to July of 1934. On cross-examination he finally admitted treatment by Dr. Harry Fusselman, a physician, preceding the injury.
 

 Plaintiff called as his witness Dr. Samuel ’W. Weaver, a specialist on diseases of the nervous system, who had plaintiff under observation and examination for several days, quite some time after the occurrence of July 6, 1934. He described such examination and, in response to questions by counsel for defendant, gave his diagnosis as combined system disease, having as its basis anemia probably of a pernicious type. On recross-examination Dr. Weaver conceded that every symptom and ailment he discovered in plaintiff could be ascribed solely to the disease of pernicious anemia.
 

 Defendant, in support of the issues on his side of the case, offered Dr. Pusselman as a witness. The doctor testified that plaintiff had called upon him as a patient some nineteen times between December 8,
 
 *12
 
 1933, and July 6, 1934. Bnt when he was asked for what he had treated him, plaintiff’s objection to the question was sustained. Counsel for defendant thereupon noted an exception and stated that if the witness were instructed to answer he would say “the treatment was for pernicious anemia.”
 

 A minority of this court is of the view that the question was both proper and important and that the witness should have been ordered to answer it.
 

 In approaching the problem at hand, careful attention should be given to two matters : (1) the language of Section 11494, General Code of Ohio, relating to privileged communications, and (2) the object sought to be subserved by such a statute, viz., the guarding of patients against the revelation of maladies tending to humiliate, embarrass or disgrace them.
 
 Steinberg
 
 v.
 
 New York Life Ins. Co.
 
 (1933), 263 N. Y., 45,188 N. E., 152, 90 A. L. R., 642.
 

 Section 11494, General Code, recites in part:
 

 “But the attorney or physician may testify by express consent of the client or patient; and if the client or patient voluntarily testifies, the attorney or physician may be compelled to testify on the same subject.”
 

 The meaning of the phrase “on the same subject,” appearing in the quoted section, was definitely settled in
 
 Spitzer
 
 v.
 
 Stillings, Exr.
 
 (1924), 109 Ohio St., 297, 300, 142 N. E., 365, 366. That case plainly holds such phrase refers to the subject of the controversy — the subject-matter of the client’s or patient’s testimony generally — and cannot be limited or restricted merely to the subject of the communications between client and attorney or patient and physician. Commenting on this topic, the opinion states (109 Ohio St., 301, 142 N. E., 366):
 

 “Counsel * # * insist that the statute should be construed as if it read thus:
 

 “ ‘If the client voluntarily testifies to such commu
 
 *13
 
 nication or advice, the attorney may be compelled to testify on the same subject.’
 

 “Such a construction would be nothing short of judicial legislation, and would be putting into the language of the statute something which the Legislature omitted.”
 

 Plaintiff herein having tendered to the jury the issue as to his general physical condition, and having testified at length on that subject, publicly baring his infirmities for monetary gain, he himself removed the veil of secrecy, and defendant should have had the' benefit of Dr. Fusselman’s testimony. Under these circumstances, defendant was entitled to present and the jury was entitled to have, the whole truth.
 

 To the end that the truth shall be revealed, the general rule in Ohio is that “all persons are competent witnesses except those of unsound mind, and children under ten years of age who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly.” Section 11493, General Code.
 

 At common law, any communication made by a patient to his physician, or any fact ascertained by a physician in the treatment of a patient, was not privileged and the physician could be compelled to disclose the same upon the trial of an action. Statutes placing a limitation upon the operation of the common law are to be strictly construed. 37 Ohio Jurisprudence, 728, Section 408. Such rule has been applied to statutes making communications between physician and patient privileged.
 
 Forrest
 
 v.
 
 Portland Ry. Light & Power Co.
 
 (1913), 64 Ore., 240, 129 P., 1048;
 
 Armstrong
 
 v.
 
 Topeka Ry. Co.
 
 (1914), 93 Kan., 493, 144 P., 847;
 
 Traveler’s Ins. Co. of Hartford
 
 v.
 
 Rergeron
 
 (1928), (C. C. A. 8), 25 F. (2d), 680, 683, 58 A. L. R., 1127, 1134 (Certiorari denied, 278 U. S., 638, 73 L. Ed., 553, 49 S. Ct., 33);
 
 Gulf, Mobile & N. R. Co.
 
 v.
 
 Willis
 
 (1934), 171 Miss., 732, 739, 157 So., 899, 901;
 
 *14
 

 General Accident, Fire & Life Assur. Co.
 
 v.
 
 Tibbs
 
 (1936), (Ind. App.), 2 N. E. (2d), 229, 232. The majority opinion, therefore, broadens the shield of Section 11494, General Code, to an unwarranted extent, and gives the phrase “on the same subject,” as used in that section, an interpretation which was expressly disapproved in
 
 Spitser
 
 v.
 
 Stillings, supra
 
 (109 Ohio St., 297, 142 N. E., 365).
 

 “Where the patient for purposes of gain or advantage discloses the nature and secrets of his malady he renounces his statutory privilege, and opens the door to a full judicial inquiry into the subject-matter of his own importation into the case.”
 
 McPherson
 
 v.
 
 Harvey
 
 (1916), (Mo. App.), 183 S. W., 653, 654.
 

 The just and sensible interpretation of a statute very similar to Section 11494, General Code, in line with the previous decisions of the Supreme Court of Ohio on the subject, is found in
 
 Roeser
 
 v.
 
 Pease,
 
 (1913), 37 Okla., 222, 131 P., 534, 537, where the court says in the opinion:
 

 “The theory upon which the privilege is based is that a person is entitled to have his physical disabilities protected from public curiosity. If, however, he goes into a court of justice and bases an action upon the existence of a physical disability and testifies himself as to its existence or non-existence, he of course is not entitled longer to claim privilege for his condition, and the statute does not contemplate protecting him in such case.” See
 
 Chicago, R. I. & P. Rd. Co.
 
 v.
 
 Hughes
 
 (1917), 64 Okla., 74, 77, 166 P., 411, 413.
 

 Under the terms of the Ohio statute, when in a civil action a patient makes an issue of his general physical condition and testifies in detail on that subject, he thereby waives his privilege — opens the door as it were — and his physician may be compelled to testify on the same subject at the instance of the adverse party. In these circumstances, the situation is the
 
 *15
 
 same as if the privileged communication statute did not exist.
 

 Putting it in another way, when a patient voluntarily divulges his corporeal afflictions on the witness stand in open court to serve his own pecuniary ends, any good or sufficient reason for maintaining the silence of the physician who has attended him no longer obtains. The Ohio statute recognizes the logic of this proposition, and provides therefor.
 

 Our position finds support in the following cases:
 
 King
 
 v.
 
 Barrett
 
 (1860), 11 Ohio St., 261;
 
 Spitzer
 
 v.
 
 Stillings, supra
 
 (109 Ohio St., 297, 142 N. E., 365);
 
 Roeser
 
 v.
 
 Pease, supra,
 
 (37 Okla., 222, 131 P., 534, 537);
 
 Forrest
 
 v.
 
 Portland Ry. Light & Power Co., supra
 
 (64 Ore., 240, 129 P., 1048);
 
 McNamee
 
 v.
 
 First Natl. Bank of Roseburg
 
 (1918), 88 Ore., 636, 641, 172 P., 801, 802 (calling attention to the similarity of the Oregon, Ohio and Oklahoma statutes);
 
 McPherson
 
 v.
 
 Harvey, supra
 
 (Mo. App.), (183 S. W., 653);
 
 Dahlquist
 
 v.
 
 Denver & R. G. Rd. Co.
 
 (1918), 52 Utah, 438, 447, 174 P., 833, 836 (cited with approval in
 
 New York Life Ins. Co.
 
 v.
 
 Snyder
 
 (1927), 116 Ohio St., 693, 702, 158 N. E., 176, 179, 54 A. L. R., 406);
 
 Hethier
 
 v.
 
 Johns
 
 (1922), 233 N. Y., 370, 135 N. E., 603;
 
 Weissman
 
 v.
 
 Wells
 
 (1924), 306 Mo., 82, 267 S.
 
 W.,
 
 400;
 
 Whitmore
 
 v.
 
 Herrick
 
 (1928), 205 Iowa, 621, 630, 218 N. W., 334, 339;
 
 Friesen
 
 v.
 
 Reimer
 
 (1933), 124 Neb., 620, 247 N. W., 561;
 
 Lazzell
 
 v.
 
 Harvey
 
 (1935), 174 Okla., 86, 49 P. (2d), 519;
 
 Schlarb
 
 v.
 
 Henderson
 
 (1936), (Ind. Sup.), 4 N. E. (2d), 205.
 

 In the case of
 
 Arizona & New Mexico Ry. Co.
 
 v.
 
 Clark
 
 (1915), 235 U. S., 669, 59 L. Ed., 415, 35 S. Ct., 210, L. R. A. 1915C, 834, quoted from liberally in the majority opinion, the court had under consideration the privilege communication statute of Arizona, reading as follows:
 

 “Provided,
 
 That if a person offer himself as a wit
 
 *16
 
 ness and voluntarily testify with, reference to such communications, that is to be deemed a consent to the examination of such physician or attorney [sic].”
 

 This statute is radically dissimilar in context to the Ohio statute in question. Furthermore, Mr. Justice Hughes, now the Chief Justice of the United States, wrote' a strong dissenting opinion in the
 
 Clark case,
 
 in which another member of the court joined. Compare
 
 Arizona Eastern Bd. Co.
 
 v.
 
 Matthews (1919),
 
 20 Ariz., 282, 293, 180 P., 159, 164, 7 A. L. R., 1149, 1159.
 

 Almost half a century ago a New York jurist spoke forcefully and to the point in the case of
 
 Treanor
 
 v.
 
 Manhattan Ry. Co.
 
 (1891), 16 N. Y., Supp., 536, 538, 28 Abbott’s N. C., 47, 53, 21 Civ. Proc. Rep., 364, 368, when he remarked:
 

 “The thing forbidden by the Code is the disclosure of professional information, and the policy of the enactment is to protect patients in the free revelation of their maladies to the physician. But what if, in order to enforce a claim against a stranger, the patient himself promulgates the information, and uncovers his maladies and infirmities in court, does he not thereby break the seal of secrecy, and absolve the physician from the obligation of silence? Does he not, in the strictest and.most emphatic sense, waive his privilege? Is it to be tolerated that, to mulct another in damages, he may inflame a jury with a false and exaggerated story of his injuries and suffering, and yet the physician whom he has consulted is not to be allowed to prevent the meditated injustice by a truthful statement of the case?”
 

 In 5 Wigmore on Evidence (2 Ed.), 223, Section 2389, the distinguished author says, in his typically vehement style:
 

 “Certainly it is a spectacle fit to increase the layman’s traditional contempt for the chicanery of the law, when a plaintiff describes at length to the jury and a crowded court room the details of his supposed
 
 *17
 
 ailment and then neatly suppresses the available proof of his falsities by wielding a weapon nominally termed privilege.”
 

 .Consequently, in our opinion, the judgment of the Court of Appeals should be affirmed.
 

 Weygandt, C. J., concurs in the foregoing dissenting opinion.