# ARIZONA & NEW MEXICO RAILWAY COMPANY *v.* CLARK.

**ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.**

No. 347.   Argued December 1, 1914.—Decided January 11, 1915.

Where an action under the Employers' Liability Act of 1908 was pending in an inferior territorial court of Arizona prior to statehood, such action being one of which the Federal and state courts have concurrent jurisdiction, the voluntary appearance of defendant in the Federal

court after statehood without interposing any objection to the jurisdiction of that court, *held*, to amount to a waiver of the objection (based upon § 33 of the Arizona Enabling Act) that upon the commencement of statehood the action should have been transferred to the proper state court, subject to removal to the Federal court upon application made in due form for that purpose.

Under Rev. Stat. Arizona, § 2535, subd. 6, providing that a physician or surgeon cannot be examined without consent of his patient as to any communication made by the patient with reference to a disease or as to any knowledge obtained by personal examination of such patient unless such patient has offered himself as a witness and voluntarily testified in regard to such communications, evidence of physicians respecting the results of a personal examination of plaintiff was in this case properly excluded because plaintiff had not testified with reference to communications made by him to the physician, although he had voluntarily testified with respect to his injuries and had introduced other evidence respecting them.

207 Fed. Rep. 817, affirmed.

THE facts, which involve the construction of certain provisions of the Federal Employers' Liability Acts of 1908 and 1910 and of the Arizona Enabling Act and of a statute of Arizona relating to the admission of evidence of physicians of the plaintiff in actions for personal injuries, are stated in the opinion.

*Mr. John A. Garver*, with whom *Mr. William C. McFarland* was on the brief, for plaintiff in error:

The action was not removable. See § 33, Arizona Enabling Act, and express prohibition in amendment of § 6 of the Employers' Liability Act of April 5, 1910, as reënacted, § 28, Jud. Code; *Lee* v. *Toledo &c. Ry.*, 193 Fed. Rep. 685; *McChesney* v. *Ill. Cent. R. R.*, 197 Fed. Rep. 85.

Even if the action were removable, the requirements of the removal statute were not complied with: This case does not fall under *Railroad Co.* v. *Mississippi*, 102 U. S. 135; *Railroad Co.* v. *Koontz*, 104 U. S. 5; *Steamship*

Co. v. *Tugman*, 106 U. S. 118, but under *Stone* v. *South Carolina*, 117 U. S. 430; *Crehore* v. *Ohio &c. Ry.*, 131 U. S. 240.

The Federal court never acquired jurisdiction. *United States* v. *Alamogordo Lumber Co.*, 202 Fed. Rep. 700.

No certified copy of the record was entered in the Federal court; and there is no evidence that any copy of the record in the state court was ever entered in the Federal court. *Blitz* v. *Brown*, 7 Wall. 693; *Idaho Land Co.* v. *Bradbury*, 132 U. S. 509.

While the failure to file the record within thirty days may be waived, *St. Paul &c. Ry.* v. *McLean*, 108 U. S. 212, it cannot be waived altogether, and the court cannot proceed with the action until the record has been filed. *Railroad Co.* v. *Koontz*, 104 U. S. 5.

The question of jurisdiction was not waived and the railway company was not precluded from raising the point for the first time in this court. *Crehore* v. *Ohio &c. Ry.*, 131 U. S. 240.

If the plaintiff in error had not raised the point, the court itself would have done so, on its own motion, if its attention had been called to it. *Mansfield &c. Ry.* v. *Swan*, 111 U. S. 379; *Metcalf* v. *Watertown*, 128 U. S. 586; *Parker* v. *Ormsby*, 141 U. S. 81.

It was error to exclude the deposition of plaintiff's attending physician under Rev. Stat. Arizona, 1901, § 2535, subd. 6, on the ground that his knowledge was privileged because obtained in a professional capacity. The privilege, if any, was waived. It was so held under a similar statute in New York. *Capron* v. *Douglass*, 193 N. Y. 11.

The principle is similar to that which is recognized in the case of attorney and client, where, if the communication is made in the presence of a third person, the privilege is waived. *Doheny* v. *Lacy*, 168 N. Y. 213; *Thompson* v. *Cashman*, 181 Massachusetts, 36.

Under the Arizona statute it is expressly provided, that, if a person offers himself as a witness and voluntarily testifies to the facts communicated to the physician, he is deemed to consent to the testimony of the physician. That is what the plaintiff below did in the present case. See also *Holloway* v. *Kansas City*, 82 S. W. Rep. 89; *Fearnley* v. *Fearntey*, 98 Pac. Rep. 819; *Capron* v. *Douglas*, 85 N. E. Rep. 827; *Sanpere* v. *Sanpair*, 107 Pac. Rep. 369; *San Fran. Cred. House* v. *MacDonald*, 122 Pac. Rep. 964; *Studebaker* v. *Faylor*, 98 N. E. Rep. 318; *Glover* v. *Patten*, 165 U. S. 394; *Hunt* v. *Blackburn*, 128 U. S. 464; *Un. Pac. Ry.* v. *McMican*, 194 Fed. Rep. 393.

*Mr. William M. Seabury* for defendant in error, submitted.

MR. JUSTICE PITNEY delivered the opinion of the court.

This action, brought by Clark against the Railway Company, was commenced in January, 1912, in the District Court of the Fifth Judicial District of the then Territory of Arizona. It was based upon the Federal Employers' Liability Act of April 22, 1908, c. 149, 35 Stat. 65, as amended April 5, 1910, c. 143, 36 Stat. 291. The complaint alleged that while defendant was engaging in commerce between the Territories of Arizona and New Mexico as a common carrier by railroad, and while plaintiff was employed by defendant in such commerce, he sustained certain personal injuries through the negligence of defendant and its employés, for which he claimed damages in the amount of $40,000. After the action was commenced, and on February 14, 1912, the Territory of Arizona became a State, and the further proceedings (improperly, it is said), were conducted in the District Court of the United States for the District of Arizona. In that court plaintiff filed a first and a second amended complaint, and defendant, having unavailingly moved to strike the latter from the files, upon grounds not necessary to be specified, answered upon

the merits, without interposing any objection to the juris-diction of the court. A trial by jury was had, resulting in a verdict and judgment for plaintiff, and this was removed by defendant's writ of error to the United States Circuit Court of Appeals for the Ninth Circuit, where the judgment was affirmed (207 Fed. Rep. 817). The present writ of error was then sued out.

Two matters only require particular discussion. The Enabling Act of June 20, 1910, under which Arizona was admitted as a State (c. 310, § 33, 36 Stat. 557, 577), provided in effect that actions which, at the date of admission were pending in the territorial courts (other than the Supreme Court) should be transferred to and proceed in the proper Federal court in cases where, if they had been begun within a State, the Federal court would have had exclusive original jurisdiction, and that where the cause of action was one of which the state and Federal courts would have concurrent jurisdiction, the action should be transferred to and proceed in the appropriate state court, but in this case might be transferred to the Federal court upon application of any party, to be made as nearly as might be in the manner provided for removal of causes from state to Federal courts.

The present action being one of which the Federal and state courts have concurrent jurisdiction, it is insisted that upon the commencement of statehood it should have been transferred to the proper state court, subject to removal to the Federal court upon application made in due form for that purpose; that in fact the files and records in the territorial court were never transferred to the proper state court, or to any state court; and that a certain petition of plaintiff, which appears in the record, wherein he prayed for the removal of the cause from the state to the Federal court, was insufficient and inefficacious for the purpose, for want of compliance with certain of the requirements of the removal statute. It is further insisted

that in the Enabling Act it was the intention of Congress to provide for the removal of actions from the state to the Federal courts only in case they might have been removed if the action had not been commenced until after the admission of the Territory as a State; and that under the express prohibition contained in the amendment of § 6 of the Employers' Liability Act, passed April 5, 1910, c. 143, 36 Stat. 291, shortly before the passage of the Enabling Act, and which declares that "no case arising under this Act and brought in any state court of competent jurisdiction shall be removed to any court of the United States," (reënacted as § 28, Judicial Code), actions of this character were not removable under the general provisions of § 33 of the Enabling Act.

We need spend no time upon these questions, since there is no ground for denying the jurisdiction of the District Court of the United States over the subject-matter, the objections urged are of such a nature that they might be waived, and the record shows that they were waived by the action of defendant in permitting the cause to proceed in the Federal court, and answering there upon the merits, without objection based upon the grounds now urged or any jurisdictional grounds. The action being one arising under a law of the United States, and the requisite amount being in controversy, the Federal District Court had original jurisdiction under § 24, Judicial Code. The removal proceedings were in the nature of process to bring the parties before that court, and the voluntary appearance of the parties there was equivalent to a waiver of any formal defects in such proceedings. *Mackay* v. *Uinta Development Co.*, 229 U. S. 173, 176. The case of *United States* v. *Alamogordo Lumber Co.*, 202 Fed. Rep. 700, cited by plaintiff in error, is clearly distinguishable, for timely objection was there made.

The second matter requiring mention is the alleged error of the trial court in excluding the evidence of two

physicians called by defendant for the purpose of testifying to the results of a personal examination of plaintiff shortly after he received the injuries for which damages were claimed. The trial court based the rulings upon an Arizona statute (R. S. 1901, § 2535, subdivision 6), which reads as follows:

"6. A physician or surgeon cannot be examined, without the consent of his patient, as to any communication made by his patient with reference to any physical or supposed physical disease or any knowledge obtained by personal examination of such patient: *Provided*, That if a person offer himself as a witness and voluntarily testify with reference to such communications, that is to be deemed a consent to the examination of such physician or attorney (*sic*)."

A material part of the injury complained of was the loss of the sight of plaintiff's left eye, and because this was set forth in the pleadings, and upon the trial plaintiff testified personally in regard to his injuries, mentioning the loss of sight and pain in the eye, and called as a witness a nurse who attended him after the accident, and who testified as to the condition of the eye, it is insisted that plaintiff in effect consented to the examination of the physicians with respect to his condition. The argument is that the statute was intended to protect persons in the confidential disclosures that may be necessary in regard to their physical condition, but was not intended to close the lips of physicians where the patient voluntarily publishes the facts to the world. In support of this, plaintiff in error cites two cases from the New York Court of Appeals, *Morris* v. *New York &c. Ry.*, 148 N. Y. 88, and *Capron* v. *Douglass*, 193 N. Y. 11. But the New York statute [1] is materially different from that of Arizona.

---

[1] EXTRACTS FROM THE NEW YORK CODE OF CIVIL PROCEDURE.

"SEC. 834. A person duly authorized to practice physic or surgery, . . . shall not be allowed to disclose any information which

The purpose of the latter enactment is very clearly expressed in its language. Without the consent of the patient, the physician's testimony is excluded with respect to two subjects: (a), any communication made by the patient with reference to any physical or supposed physical disease, and (b), any knowledge obtained by personal examination of such patient. And this privilege is waived, according to the terms of the proviso, only in the event that the patient offers himself as a witness and voluntarily testifies "with reference to such communications." We would have to ignore the plain meaning of the words in order to hold, as we are asked to do, that the testimony of other witnesses offered by the patient, or the testimony of the patient himself with reference to other matters than communications to the physician, or any averments contained in the pleadings but not in the testimony, amount to a waiver of the privilege. The enactment contemplates that the physician receives in confidence what his patient tells him and also what the physician learns by a personal examination of the patient. It contemplates that the patient may testify with reference to what was communicated by him to the physician, and in that event only it permits the physician to testify without the patient's consent

The express object is to exclude the physician's testimony, at the patient's option, respecting knowledge

---

he acquired in attending a patient, in a professional capacity, and which was necessary to enable him to act in that capacity. . . ."

\* \* \* \* \* \* \* \*

"SEC. 836. The last three sections apply to any examination of a person as a witness unless the provisions thereof are expressly waived upon the trial or examination by the . . . patient. . . . The waivers herein provided for must be made in open court, on the trial of the action, or proceeding, and a paper executed by a party prior to the trial, providing for such waiver shall be insufficient as such a waiver. . . ."

gained at the bedside, in view of the very delicate and confidential nature of the relation between the parties. The statute recognizes that they do not stand on equal terms. The patient is more or less suffering from pain or weakness, distracted by it, ignorant of the nature or extent of his injury or illness, driven by necessity to call in a professional adviser, sometimes with little freedom of choice; he relies, perforce, upon the physician's discretion, as well as upon his skill and experience, and is obliged by the circumstances of his own condition not only to make an explanation of his ailment or injury, so far as it may be within his knowledge and may be communicable by word of mouth, but also to submit to the more intimate disclosure involved in a physical examination of his person. The physician, on the other hand, is in the full possession of his faculties, and of that knowledge which is power. Manifestly, the patient occupies, for the time, a dependent position. The chief policy of the statute, as we regard it, is to encourage full and frank disclosures to the medical adviser, by relieving the patient from the fear of embarrassing consequences. The question of dealing justly as between the patient and third parties is a secondary consideration.

It is a mistake, we think, to regard the patient's disclosures—whether verbal or physical—as voluntary in the full sense; they are believed by him to be necessary for the restoration of health or the preservation of life or limb. But, at least, if he has command of his mind and memory, the patient may somewhat control the extent of his disclosures by word of mouth, and may be able afterwards to testify respecting them; while, if he submits himself to a physical examination at the hands of the physician, he cannot know in advance the nature or extent of what the physician will learn, cannot confine the disclosure to the present ailment or injury, and cannot afterwards testify respecting its results, excepting as the physician may in-

form him of them. And, in many cases, the physician
may, with perfectly proper motives, withhold from the
patient the results of the physical examination and his
deductions therefrom.

We cannot, therefore, without encroaching upon the
domain of legislation, declare that there is no substantial
ground for a distinction between the information the
physician gains from verbal communications made by the
patient and the far wider knowledge that he derives from
his personal examination of the patient. Certainly it
cannot be said that when the patient afterwards has
occasion to make averments and adduce evidence re-
specting the nature of the ailment or injury, he thereby
necessarily publishes to the world the facts as disclosed to
the physician through the physical examination. In
many cases this must be very far from true; the patient
having no access to the facts as thus disclosed excepting
with the consent of the physician. The language of the
statute, as we think, shows a recognition of this, and
also of the fact that when the patient himself has occasion
to testify respecting his ailment or disease, he often must
do so without knowing the range or the character of the
testimony that might be given by the physician, and
without any means of contradicting it. In order to pre-
vent the patient from being subjected to this disadvantage,
the Act gives him the option of excluding the physician's
evidence entirely by himself refraining from testifying
voluntarily as to that respecting which alone their knowl-
edge is equal, namely, what the patient told the physician
with reference to the ailment.

The framer of the Act was careful to choose language
that recognizes the distinction between (a) communica-
tions made by the patient and (b) knowledge obtained
by the doctor through a personal examination of the
patient. The New York statute, which, so far as we have
observed, was the first to establish a privilege with respect

to the knowledge gained by a physician while attending a patient in a professional capacity, recognizes no such distinction. Nor does it define with precision what conduct on the part of the patient shall constitute a waiver of the privilege. Hence the courts of that State deemed themselves at liberty to determine this question upon general principles, derived from the supposed policy of the law. Not only, therefore, are the decisions of the courts of that State, and of other States having statutes formed upon the same model, valueless as guides to the meaning of the statute here in question, but the very fact that the Legislature of Arizona departed from the form of the New York statute indicates that it did so because it had a different purpose to express. We are unable to see anything that would justify us in refusing judicial recognition to a distinction thus laid hold of by the lawmaking body in defining the extent and conditions of the privilege.

To construe the Act in accordance with the contention of plaintiff in error would not only be a departure from its language, but would render it inapplicable in all cases where the "physical or supposed physical disease" is the subject of judicial inquiry, and where any averment respecting it is made in pleading or evidence upon the subject is introduced at the trial in behalf of the patient. This would deprive the privilege of the greater part of its value, by confining its enjoyment to the comparatively rare and unimportant instances where the patient might have no occasion to raise an issue or introduce evidence on the subject, or where the patient's disease might happen to be under investigation in a controversy between other parties. We are constrained to reject this construction.

The other questions that are raised require no special mention. It is sufficient to say that we find no error warranting a reversal of the judgment.

*Judgment affirmed.*

MR. JUSTICE HUGHES, with whom MR. JUSTICE DAY concurred, dissenting.

I am unable to agree to the approval of the ruling which excluded the physicians' testimony. It should be supposed that it was the legislative intent to protect the patient in preserving secrecy with respect to his ailments and not to give him a monopoly of testimony as to his condition while under treatment. Here, not only did the plaintiff introduce the evidence of his nurse, describing in detail his bodily injuries and the medical treatment, but the plaintiff offered himself as a witness and voluntarily testified as to his bodily condition. His testimony covered the time during which he was under the physician's examination, and it was upon this testimony that he sought to have the extent of his injuries determined by the jury and damages awarded accordingly. To permit him, while thus disclosing his physical disorders, to claim a privilege in order to protect himself from contradiction by his physician as to the same matter, would be, as it seems to me, so inconsistent with the proper administration of justice that we are not at liberty to find a warrant for this procedure in the statute unless its language prohibits any other construction. [See *Hunt* v. *Blackburn*, 128 U. S. 464, 470; *Epstein* v. *Railroad*, 250 Missouri, 1, 25; *Roeser* v. *Pease*, 37 Oklahoma, 222, 227; *Forrest* v. *Portland Ry. L. & P. Co.*, 64 Oregon, 240; *Capron* v. *Douglass*, 193 N. Y. 11; 4 Wigmore on Evidence, § 2389 (2).]

As I read the Arizona statute it was framed not to accomplish, but to prevent, such a result. We have not been referred to any construction of it by either the territorial or state court, and we must construe it for ourselves. To my mind, its meaning is that if the patient voluntarily testifies as to his physical condition at the time of the examination, he cannot shut out his physician's testimony as to the same subject. To reach the contrary

conclusion, emphasis is placed on the words 'such communications' in the proviso, and it is insisted that the proviso was to apply only if the plaintiff testifies as to what he *told* the physician. I think that this is altogether too narrow. When the patient submits himself to an examination, he as truly communicates his condition to the physician as if he tells him in words. Although the patient were dumb, his submission to inspection in order that he might be treated would be none the less a communication of what is thus made known. That is the very ground of the privilege. Nor does the fact that the statute, with unnecessary diffuseness, refers in the sentence defining the privilege to 'any communication' or 'any knowledge obtained by personal examination' limit the natural meaning of the proviso. In saying that 'if a person offer himself as a witness and voluntarily testify with reference to such communications,' it is to be deemed 'a consent' to the physician's testifying, the proviso may be, and I think should be, taken to embrace implied as well as express communications. I can find no reasonable basis for a distinction. It is said that the plaintiff may not know what the physician has observed or what testimony he may give. But when the plaintiff testifies he invites analysis and contradiction, and in contemplation of law he asks to have his statement judged by what is shown to be the truth of the matter. If the plaintiff testifies as to what he told the physician, it is conceded that the physician may be examined, and the obvious reason is that the plaintiff is not to be permitted to insist upon his privilege as to what he himself is disclosing. This is the policy of the statute—and it governs equally, as I read it, when the plaintiff testifies as to his physical condition at the time he submits himself to the physician's examination. The words 'such communications' are broad enough to cover all communications for the purpose of treatment, whether by utterance or by what is usually more revealing—the

yielding of one's body to the scrutiny of the practitioner. To repeat, it seems to me that the statute was intended to make it impossible for the plaintiff to claim the privilege when he himself has testified as to the subject of it.

As in this view competent, and presumably important, evidence was excluded, I think that the judgment should be reversed.

I am authorized to say that MR. JUSTICE DAY concurs in this dissent.