Dan CALDWELL, Appellee,

v.

Bob TOOMBS, Appellant.

No. 52118.

Court of Appeals of Oklahoma, Division No. 2.

June 19, 1979.

Released for Publication by Order of Court of Appeals July 19, 1979.

Robert H. Loofbourrow, Loofbourrow, Loofbourrow & Manske, Boise City, for appellee.

James R. Fletcher, Guymon, for appellant.

BRIGHTMIRE, Judge.

To breed or not to breed—that is the question. Did Bob Toombs breach a written contract that required him to furnish the stud services of his quarter horse, Ima Jet Deck, to his brother-in-law's mares, or were the mares merely snubbed by a stubborn stud? An empaneled jury concluded the breeding pact was breached, and judgment was rendered in favor of Dan Caldwell for $2,600. Toombs appeals.

I

On July 9, 1973, the parties entered into a written contract under the terms of which plaintiff Caldwell sold Ima Jet Deck to defendant Toombs in consideration of Toombs' promise that the seller would receive "three (3) free breedings per year to the aforesaid horse [Ima Jet Deck] for so long as any mares are being bred to said stud, said breedings to be free of any charges whatsoever for stud fees, mare care or any other expenses." The contract further reads that "any sale or transfer of the horse by Toombs will be subject to this agreement . . . ."

On July 5, 1977, Caldwell sued Toombs alleging that in 1974 he placed a mare with Toombs for the purpose of being bred by the coveted, three-year-old quarter horse whose remaining sexual life expectancy was 12 years but that defendant has since failed and refused to permit plaintiff to place any more mares with Deck. Plaintiff further

alleged that in 1973 a reasonable stud fee was $250 per standing but that in 1977 such a fee was $350. Plaintiff concluded that, as a consequence, he had suffered damages in the amount of $11,450.

In his answer, defendant admitted the contract but denied he had breached it.

## II

Defendant's first complaint is that his motion for a directed verdict in his favor should have been sustained immediately after plaintiff's counsel finished making his opening statement.

The argument is that although plaintiff's "cause of action is based solely upon the assertion of appellee [plaintiff] that after 1974 appellant [defendant] refused to allow the appellee to place any mares with appellant's stud for breeding purposes," plaintiff's counsel told the jury in his opening statement that in 1974 Caldwell "took three mares to Ima Jet Deck," one of which got pregnant and bore a colt named Dandy Lady Luck; that he later took Dandy Lady Luck and two other mares to the stud for service, and again one got pregnant although she ultimately delivered only a dead colt; and that in 1976 Caldwell "took three more mares back [for service]," none of which got pregnant.

Defendant concludes that this conflict between the allegations of plaintiff's petition and the opening statements of plaintiff's counsel entitled him to a directed verdict immediately after the opening statement. Defendant cites *Williams v. Long Bell Lumber Co.*, 203 Okl. 250, 219 P.2d 992 (1950) as authority for the proposition that if, during opening statement, plaintiff's counsel makes admissions that bar recovery, defendant is entitled to a judgment on the pleadings and opening statement.

■ The defendant is correct about what *Williams* holds, but the decision has no

relevance to the situation complained of. In the first place, a motion for a directed verdict at the opening statement stage of a case is premature.[1] What defendant was really seeking was a judgment on the opening statement.[2] Secondly, just because there is a conflict between some of the allegations of plaintiff's petition and the opening statements of his counsel, it does not necessarily follow that the latter consist of "admissions barring recovery." We hold that, here, none of the opening statements were admissions which precluded recovery. Therefore, the trial court properly rejected defendant's motion.

## III

Next, defendant says that the court should have sustained his "demurrer and motion for directed verdict *at the close of appellee's* [plaintiff's] *evidence.*" (emphasis added) Again, the motion for a directed verdict was premature because defendant had not yet put on his evidence, and, therefore, the question is narrowed to whether or not the trial court erred in overruling the demurrer.

■ The answer is that it is immaterial whether or not the ruling was error because defendant did not elect to stand on his demurrer but proceeded to present countervailing evidence. In so doing he waived whatever error may have inhered in the ruling. *Stout v. Taylor*, Okl., 290 P.2d 761 (1955); *St. Louis & S.F.R. Co. v. Loftis*, 25 Okl. 496, 106 P. 824 (1910).

## IV

■ Defendant's final attack on the judgment is that the "evidence presented was insufficient to support the verdict of the jury." This issue is not reviewable for two reasons. First, defendant did not move

1. See 12 O.S.1971 § 577, subd. 3; *Hudson v. Blanchard*, Okl., 294 P.2d 554 (1956). Generally, *a motion for a directed verdict is appropriate only after defendant has had an opportunity to adduce evidence.*

2. See *Neugebauer v. Neugebauer*, Okl., 548 P.2d 1032 (1976).

for a directed verdict after both parties rested and, therefore, did not preserve the question as *Stout* required him to do. Secondly, even if defendant had so moved, we still could not consider the issue because defendant designated for inclusion in the record only that evidence presented by plaintiff at the trial, and appellate review requires consideration of all evidence adduced at trial in determining whether plaintiff has made out a prima facie case. *But-ler v. Civic Gas Co.*, 199 Okl. 597, 188 P.2d 843 (1947).

Affirmed.

BACON, P. J., and NEPTUNE, J., concur.