28 F.3d 110
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES Of America, Plaintiff-Appellee,
v.
ONE PARCEL OF LAND TITLED IN the NAME OF Max J. RICHTER and
Betty L. Richter, Husband and Wife, as Tenants by the
Entirety, Being Lot 82 of the "Enchanted Lake Estates, Unit
II", as Shown On File Plan Number 652, Tax Map Key No.
4-2-047-005(1), Being Part of R.P. 4475, L.C. AW. 7713,
Apana 45 to V. Kamamalu, Together With Appurtenances and
Improvements, Situate at Kaelepulu, Kailua, District of
Koolaupoko, City and County Of Honolulu, State of Hawaii, Defendant.
Max J. Richter, Claimant-Appellant, and Betty L. Richter, Claimant.
 No. 92-16361.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1993.
Decided June 23, 1994.
As Amended July 26, 1994.
 
 1
 Before: POOLE, WIGGINS, and T.G. NELSON, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 FACTS AND PRIOR PROCEEDINGS
 
 3
 The United States ("Plaintiff") filed this action under 21 U.S.C. Sec. 881 on November 10, 1988, seeking forfeiture of a leasehold interest in a certain plot of land in Hawaii. Max J. Richter and his former spouse were the alleged leaseholders. On November 23, 1988, the U.S. Marshals Service posted a warrant for arrest and a copy of the complaint on the property and left copies with the person living in the home on the land.
 
 
 4
 Plaintiff knew that throughout 1988 and 1989 Richter was living in Subic Bay, Philippines. Notwithstanding, Plaintiff tried to serve process on Richter only in Hawaii. Process was returned unserved. Plaintiff then obtained from the district court an order directing that notice of the arrest of the property be published in the Honolulu Star Bulletin. Notice was published in that paper on January 11, 18, and 25, 1989. Richter learned in December 1988 that some court action had been filed affecting his property.
 
 
 5
 Richter never filed a formal claim or answer. On October 17, 1989, Daniel I. Fernandez, a naval investigative special agent, declared by affidavit that Richter was served process in April 1989, at Subic Bay. Richter asserts that Fernandez's affidavit is false; Richter claims he was never served process. On October 18, 1989, the clerk of the district court entered Richter's default. Thereafter, Richter filed a motion to set aside the entry of default, arguing that he was not served process. The district court denied Richter's motion. The court held that service by posting and publication was sufficient. The court declined to decide whether Richter was served personally in April 1989. Later, the district court entered default judgment against Richter. He appealed.
 
 DISCUSSION
 1. Personal Service of Process
 
 6
 Because the district court declined to resolve whether Richter was served personally in April 1989, the only service of process we shall consider on appeal is that held valid by the district court: service by posting and publication.[1] Plaintiff urges that such service was sufficient.[2]
 
 
 7
 Richter, on the other hand, contends that personal service of process was required by Sec. 881 of 21 U.S.C. Subsection 881(b) adopts the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules") as controlling. The Supplemental Rules in turn make the Federal Rules of Civil Procedure, which require personal service of process, applicable ("except to the extent that they are inconsistent with the [ ] Supplemental Rules"). Supp.R. "A." Alternatively, Richter argues that personal service was required under the Constitution, citing, inter alia, Mennonite Bd. of Missions v. Adams, 462 U.S. 791 (1983), and United States v. Borromeo, 945 F.2d 750 (4th Cir.1991).
 
 
 8
 Richter also claims that United States v. James Daniel Good Real Property, 114 S.Ct. 492 (1993) [J.D.G. Real Property ], mandated that he be personally served. Under J.D.G. Real Property, an owner of a home has a due process right to notice and a hearing prior to the seizure of the home. Id. at 505; see also United States v. All Assets of Statewide Auto Parts, Inc., 971 F.2d 896, 901-05 (2d Cir.1992). No notice or opportunity for a hearing was given to Richter prior to his home being seized. Thus, Richter concludes, his home was seized illegally. Richter argues that the illegal seizure of his home invalidates the forfeiture.
 
 
 9
 Because the facts relating to service of process by posting and publication are not disputed, this court reviews the district court's decision de novo. See Bourassa v. Desrochers, 938 F.2d 1056, 1057 (9th Cir.1991). We reverse. After briefs in this case were filed, this court decided the case of United States v. Vacant Land Located at 10th St. and Challenger Way in Palmdale, CA., 15 F.3d 128 (9th Cir.1994) [Vacant Land]. Vacant Land mandates reversal in this case, for reasons only slightly different than those Richter asserts.
 
 
 10
 In Vacant Land, this court held that some personal service is required by statute in an action seeking forfeiture of land. 15 F.3d at 131. Section 881(d) of 21 U.S.C. adopts by reference the requirements of 19 U.S.C. Sec. 1607(a), which requires that "[w]ritten notice of seizure together with information on the applicable procedures ... be sent to each party who appears to have an interest in the seized article." See 15 F.3d at 131. Richter "appears to have an interest in the seized article," being mentioned in the complaint as such a person. See id. Thus, personal service was due Richter. The "failure to have served him personally [is] fatal to the forfeiture." Id. In Vacant Land, the property claimant waived his right to service of process, by making a voluntary appearance. Richter has not waived his right. Otherwise, this case is indistinguishable from Vacant Land.
 
 
 11
 Vacant Land clearly treats government compliance with Sec. 1607(a) as a prerequisite to the district court's obtaining jurisdiction over a property claimant's rights. Vacant Land held that the property claimant who had not been served under Sec. 1607(a) waived his right to service of process by voluntarily appearing in the district court without reserving the claim that he had not been served. 15 F.3d at 131 (citing Jackson v. Hayakawa, 682 F.2d 1344, 1347 (9th Cir.1982), and New York Times Co. v. Sullivan, 376 U.S. 254, 264 n. 4 (1964)). Vacant Land, Jackson, and Sullivan fall in a long line of authority holding that a voluntary appearance submits the appearing party to the jurisdiction of the court. See, e.g., Kryger v. Wilson, 242 U.S. 171, 177 (1916) (holding that the lower court had jurisdiction over a property claimant as a result of his voluntary appearance). "The voluntary appearance of a [party] is equivalent to personal service of the summons and copy of the complaint upon him." In re Connaway, 178 U.S. 421, 428 (1900). In fact, generally voluntary appearance in a court waives any objection that the court lacks authority to adjudicate a litigant's rights. E.g., Sosna v. Iowa, 419 U.S. 393, 396 n. 2 (1975) (indicating that voluntary appearance of a state in state court might waive state sovereign immunity in some state courts); Arizona & New Mexico Ry. v. Clark, 235 U.S. 669, 674 (1915) (holding that voluntary appearance in federal court after removal waived objections to removal); Jackson, 682 F.2d at 1347-49 (holding that voluntary appearance can waive lack of personal jurisdiction); Murphy v. Travelers Ins. Co., 534 F.2d 1155, 1159 (5th Cir.1976) (noting that a voluntary appearance may waive venue objections).
 
 
 12
 In joining this long line of cases, Vacant Land indicates that Sec. 1607(a) involves a court's authority to adjudicate a litigant's rights. In fact, the only reasonable reading of Vacant Land and Sec. 1607(a) is that Sec. 1607(a) is prerequisite to jurisdiction over the property claimant. Service of process requirements are generally prerequisite to a court's jurisdiction over parties adverse to the plaintiff. See Mason v. Genisco Technology Corp., 960 F.2d 849, 851-54 (9th Cir.1992) (holding the district court lacked jurisdiction over the defendant because the plaintiff had failed to comply with Fed.R.Civ.P. 4, even though the defendant had notice of the action); Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc., 840 F.2d 685, 688 (9th Cir.1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed.R.Civ.P. 4."). Because the government has failed to give Richter the process due him under the statute and Richter has not waived his right to it, Vacant Land requires us to conclude that the district court yet lacks jurisdiction over Richter. In so ruling, we note that in this case the government knew Richter's whereabouts and could have given him notice. We express no view as to what Sec. 1607(a) would require in a forfeiture case in which the government did not know where to find the property claimant.
 
 
 13
 Because we conclude that personal service was statutorily required, we need not and do not consider whether personal service was constitutionally required. However, we note that notice to Richter under Sec. 1607 will, particularly in conjunction with the posting and publishing that has already occurred, give notice sufficient to comply with due process. See Adams, 462 U.S. at 791. Because the government may not proceed without complying with procedures that will give Richter due process, a decision is unnecessary as to whether procedures presently complied with are constitutional.
 
 
 14
 We do not rest our decision on J.D.G. Real Property. Richter is correct that the seizure of his home without prior notice and opportunity for a hearing was illegal. This court has held that the illegal seizure of a home does not invalidate the forfeiture of that home, however. United States v. James Daniel Good Property, 971 F.2d 1376, 1382-84 (9th Cir.1992), aff'd in part, rev'd in part, 114 S.Ct. 492 (1993). The Supreme Court has not disturbed that holding (or even addressed it). See 114 S.Ct. at 492. Consequently, the illegal seizure of Richter's home did not invalidate the forfeiture. Rather, Richter may, on remand, collect any damages he can show resulted from the illegal seizure. See 971 F.2d at 1384 (holding the homeowner-landlord was entitled to any rents he would have received during the illegal seizure of his home).
 
 
 15
 On remand, the district court should determine whether Richter was personally served in April 1989 so as to satisfy Sec. 1607(a)'s requirements.
 
 2. Other Arguments
 
 16
 Richter argues that this forfeiture action should be dismissed because (1) Plaintiff did not obtain a probable cause determination prior to seizure and (2) the complaint was verified only on information and belief. These arguments are without merit. Plaintiff did obtain a probable cause determination prior to seizure. SER 6; see SER 1. Moreover, generally a complaint may be verified on information and belief. United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1068 (9th Cir.1994) ("When the government official signs the verified complaint, he must satisfy himself that the averments in the complaint are true, based either upon his own knowledge or upon information and belief." (emphasis supplied; internal quotations omitted)); D.Haw.R. 604-2; cf. United States v. $84,740.00 U.S. Currency, 900 F.2d 1402, 1404-05 (9th Cir.1990) (noting that information and belief are sufficient under California law).
 
 3. Arguments on Remand
 
 17
 Some other issues Richter raises will become relevant only if the district court finds that Richter was served in April 1989: whether service, if it occurred in April 1989, was by a non-marshal; and whether proof of service was required or filed. Still other issues will arise only if the April 1989 service, assuming it occurred, was valid: whether default was inappropriate because a letter written by Richter, addressed to the court, showed that Richter intended to defend the action; whether the district court was justified in refusing to set aside the entry of default because Richter knew of the action; whether Richter can present a meritorious defense; and whether Richter can satisfy the requirements of Fed.R.Civ.P. 60(b). All of these issues are still hypothetical. We therefore decline to address them. As this court stated in Leslie Salt Co. v. Froehlke, 578 F.2d 742 (9th Cir.1978), "[O]ur precise holding ... may not be sufficiently comprehensive to dispose of all questions that might arise on remand. Our reluctance to address issues, which on the basis of the present record must be hypothetical, is required by our disability to render advisory opinions. A full development of the facts on remand will remove this obstacle." Id. at 757.
 
 
 18
 Richter also argues that the complaint lacked particularity and therefore failed properly to allege probable cause. The Supplemental Rules "abandon the concept of notice pleading and instead require allegations of specific facts supporting probable cause." $191,910.00 in U.S. Currency, 16 F.3d at 1068; e.g., United States v. $38,000.00 in U.S. Currency, 816 F.2d 1538, 1547-48 (11th Cir.1987); United States v. $39,000 in Canadian Currency, 801 F.2d 1210, 1215-22 (10th Cir.1986).
 
 
 19
 We decline to address Richter's argument that the complaint lacked particularity. Richter failed to raise this argument in the district court. If Richter was not served in April 1989, he may have had no occasion to raise this argument. If Richter was served in April 1989, however, then he may have waived this argument by failing to raise it below. See Supp.R.E(2)(a); Red.R.Civ.P. 12(b), (e), (f) (providing that lack of particularity should be raised within certain time limits); cf. $38,000.00 in U.S. Currency, 816 F.2d at 1547 n. 20 (treating as a motion to strike under Fed.R.Civ.P. 12(f) a claimant's motion to dismiss a forfeiture complaint for failure to state facts showing probable cause with particularity). Because whether Richter waived this argument depends in part on whether Richter was served in April 1989, we decline to consider this issue. Froehlke, 578 F.2d at 757.
 
 CONCLUSION
 
 20
 For the foregoing reasons, the judgment of the district court forfeiting the property is REVERSED. The case is REMANDED for proceedings consistent with this disposition.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Contrary to Plaintiff's assertions, statements made by Judge Ezra in the Order Granting Entry of Default Judgment do not establish that Richter was personally served. Judge Ezra stated as follows in recounting the events that led to a denial of Richter's motion to set aside the default:
 On January 29, 1990, Mr. Richter filed a Motion to Set Aside Entry of Default. On February 12, 1990, the United States filed its memorandum in opposition which established that the government had properly published notice of this forfeiture action, and had personally served Mr. Richter with a copy of the complaint. Following briefing by both parties and a hearing, the court found that Mr. Richter had received constructive notice and actual notice of the action and denied the motion to set aside default....
 ER 70. Later in the same order, Judge Ezra stated:
 In [denying Richter's motion to set aside entry of default], this court found that Mr. Richter had received notice of this forfeiture action, therefore, it does not appear that the [sic] Mr. Richter's default was due to excusable neglect.
 ER 71-72. However, the government's memorandum did not establish that Richter was personally served. It merely disputed Richter's contention that he was not served. Judge Spencer Williams, in denying Richter's motion to set aside the default entry, specifically noted this dispute of fact and declined to resolve it. ER 66. Judge Williams held instead that constructive service, by posting and publication, was sufficient; he reasoned that constructive service rendered personal service unnecessary. Though Judge Williams also found that Richter knew of the action's existence, that finding does not mean that Richter had "actual notice" of the action, which would mean he had been served papers.
 
 
 [2]
 Plaintiff also argues that Richter filed his motion to set aside the default too late. Richter filed the motion on January 29, 1990, more than three months after default was entered. However, Richter claims he did not know until January 1990 that default had been entered, an assertion Plaintiff does not dispute. Nor does Plaintiff allege that the three months caused prejudice. Given the circumstances, Richter's motion was not too late